UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:25-cr-00022 |
| v. | ) | |
| | ) | Magistrate Judge Newbern |
| [1] YILIBETH DEL CARMEN RIVERO-DE CALDERA a/k/a "YIBI" | ) ) ) | |
| [2] KLEIVER DANIEL MOTA RIVERO a/k/a "KLEIBER" | ) ) ) | |
| [3] YURIBETZI DEL VALLE GOMEZ MACHUCA a/k/a "LA GORDA" | ) ) ) | |
| [4] WILMARYS DEL VALLE MANZANO SOLORZANO a/k/a "LA CHINA" | ) ) ) | |
| [5] ENDRIK ALEXANDER MORALES-RIVERO a/k/a "ENDRI" | ) ) ) | |
| [6] ARIANNYS BEATRIZ GUTIERREZ-CARRILLO a/k/a "NANI" a/k/a "NANY" | ) ) ) ) | |
| [7] FRANKYANNA DEL VALLE ROMERO-RIVERO a/k/a "FRANYA" | ) ) ) | |
| [8] JESUS ENRIQUE CASTILLO RODRIGUEZ a/k/a "CHU CHU" | ) ) ) ) | |

**UNITED STATES' MOTION FOR DETENTION HEARING
AND FOR DETENTION OF ALL DEFENDANTS**

The United States of America, by and through its attorney, the Acting United States Attorney for the Middle District of Tennessee, moves this Court for a detention hearing and for detention of all eight defendants in this matter, pursuant to the Bail Reform Act, 18 U.S.C. §§ 3142(f)(1)(A), (f)(2)(A), and (f)(2)(B).

The United States requests a detention hearing pursuant to § 3142(f)(1)(A) for [1] YILIBETH DEL CARMEN RIVERO-DE CALDERA ("Rivero"), [2] KLEIVER DANIEL MOTA RIVERO ("Mota"), and [3] YURIBETZI DEL VALLE GOMEZ MACHUCA ("Gomez"), because they have been charged with a "crime of violence,"[1]—specifically, conspiracy to commit sex trafficking under 18 U.S.C. §§ 1591(a) and 1594(c). Section 3142(e)(3)(d) in turn triggers a rebuttable presumption for this offense that "no condition or combination of conditions will reasonably assure the appearance of [Rivero, Mota, and Gomez] as required and the safety of the community."

All eight defendants are also subject to a detention hearing under 18 U.S.C. § 3142(f)(2)(A), because there is a "a serious risk that [the defendants] will flee" based on their conduct in this case and lack of lawful immigration status, and 18 U.S.C. § 3142(f)(2)(B), because there is a "serious risk that [they] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

As set forth below, a detention hearing is warranted, and detention is appropriate for all defendants because there is no condition or combination of conditions that will reasonably assure the appearance of the defendants in court, the safety of specific individuals and the community, and the integrity of these proceedings.

## FACTUAL BACKGROUND

Mother-son defendants Rivero and Mota led an unlawful commercial sex enterprise in the Middle District of Tennessee and elsewhere from at least July 2022 through March 2024. Rivero's other children, [5] ENDRIK ALEXANDER MORALES-RIVERO ("Morales"), AND [7]

---

[1] Congress has defined the term "crime of violence," "[a]s used in sections 3141-3150 of this chapter," as including "any offense under chapter 77." 18 U.S.C. § 3156(a)(4)(C). Sections 1591 and 1594 both fall within Chapter 77 of the U.S. Code.

FRANKYANNA DEL VALLE ROMERO-RIVERO ("Romero") assisted in the day-to-day operations of the enterprise, as did their respective spouses, [6] ARIANNYS BEATRIZ GUTIERREZ-CARRILLO ("Gutierrez") AND [8] JESUS ENRIQUE CASTILLO RODRIGUEZ ("Castillo"). [4] WILMARYS DEL VALLE MANZANO SOLORZANO ("Manzano"), Mota's girlfriend, assisted the enterprise by recruiting victims from South America. Gomez served as a money collector and enforcer for the enterprise. Together, these eight defendants worked together to exploit dozens of victims during the charged time period.

Rivero, Mota, and Gomez conspired to: (1) identify and target young poor women, typically from Venezuela, who needed to provide for their families; (2) recruit the targeted women with false promises of opportunities to make money in the United States, including through legitimate work (i.e., something other than commercial sex); (3) finance and organize the women's treacherous journey from South America to the U.S. border; (4) impose a significantly larger smuggling debt upon the women's arrival than discussed during the recruitment phase and layer arbitrary fines and expenses on top of the debt as the women struggled to repay it; and (5) make it clear to the women—through the use of threats of physical, immigration, and reputational harm— that the only way to pay off their debt was by engaging in commercial sex at the defendants' direction.

A review of text messages, immigration and travel records, and commercial sex advertisements shows that all of the defendants conspired with each other to further the objectives of the commercial sex operation by financing and facilitating the travel of victims from South America and other states to the Middle District of Tennessee (sometimes by accompanying the victims personally), posting commercial sex advertisements of victims on the internet, communicating and negotiating rates with commercial sex clients, monitoring the victims at hotels,

3

and collecting victims' earnings. For example, Morales, Romero, Gutierrez, and Castillo served as dispatchers or "*telefonistas*"—i.e., they communicated with commercial sex buyers through messaging apps to negotiate rates for specific commercial sex acts that victims were expected to perform and thereafter directed the buyers to specific hotel rooms where the victims were located. The dispatchers in turn received commissions for each commercial sex "date" that they arranged for the victims.

In some cases, the defendants separated victims from their children or restricted the victims' access to their identity and immigration documents to keep them working for the defendants' financial benefit. Rivero and Mota further used their ties to the Venezuelan gang Tren de Aragua (TdA), known to Venezuelans as an inherently violent gang, to cause the victims to continue engaging in commercial sex acts out of fear of the serious harm that they or their families would suffer if they attempted to leave prior to paying off their debts.

Manzano personally recruited at least one victim and on at least one occasion traveled with a recruited victim through Mexico to the southern U.S. border and ultimately on to Nashville. On another occasion, Manzano threatened a victim's family member in South America, with the help of a third party, alleging that the victim owed a debt to Manzano.

On December 14, 2023, the Tennessee Bureau of Investigation (TBI) obtained a state search warrant for the Murfreesboro residences of Rivero and Mota and executed those searches at the same time as a recovery operation at two Nashville hotels where the victims were housed and forced to take commercial sex clients. Morales, Romero, Gutierrez, and Castillo were all present and living in Rivero's home at the time of the searches. Gomez was present at one of the hotels. Law enforcement later learned that Gomez had deleted evidence from her cell phone when law enforcement arrived and directed victims at the hotel to do the same.

Following the searches, TBI obtained arrest warrants for Rivero and Mota on state human trafficking charges. Rivero was arrested the same day as the operation, while Mota remained at large until his arrest on March 13, 2024, at another Nashville area hotel. At the time of his arrest, Mota was found in a hotel room with Manzano and the child of a victim.[2] Law enforcement also uncovered a loaded 9-millimeter Glock handgun with an extended magazine among Mota's possessions in the hotel room, as well as immigration documents belonging to a victim in this case.

Prior to his arrest, Mota sent communications to victims in this case who fled after Rivero's arrest, threatening them and instructing them to move to other cities to continue working in commercial sex and repaying their debt. From December 2023 until March 2024, while he was at large, it is believed that Mota traveled to several states including Texas and Florida. Manzano, for her part, was with Mota at the time of his arrest and has been in constant communication with him since then, as evidenced by their near-daily jail calls and messages. She also has facilitated his calls with third parties from jail, looping them into three-way calls. Subsequent investigation revealed that Morales, Romero, Gutierrez, and Castillo fled to Texas after Rivero was taken into state custody.

All defendants are Venezuelan nationals who either entered the United States unlawfully (i.e., without inspection) or presented for inspection at the border and were released on their own recognizance pursuant to the prior Administration's policy of granting Temporary Protected Status ("TPS") to Venezuelan migrants. All defendants are now pending removal proceedings pursuant to active immigration detainers as a result of their participation in the charged conspiracies and, for some defendants, their initial unlawful entry.

---

[2] That victim was later found in a different local hotel room where she was performing commercial sex acts. Investigators later realized that this same child was present in Rivero's home with the dispatcher defendants during the December 2023 search warrant execution.

## LEGAL ANALYSIS

Pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(2)(A) & (B), the Court must hold a hearing on the question of detention upon the motion of the government in a case that, by a preponderance of the evidence, involves: (1) a crime of violence; (2) a serious risk that the defendant will flee; or (3) a serious risk that the defendant will obstruct or attempt to obstruct justice. *See United States v. White*, 2021 WL 2155441, at *3 (M.D. Tenn. May 27, 2021) (establishing preponderance of the evidence standard to trigger detention hearing).

The Bail Reform Act then directs that the Court "shall … take into account the available information concerning" the factors enumerated in § 3142(g) to determine whether pretrial detention is warranted. As discussed below, all eight defendants meet the criteria for pretrial detention, and this Court should hold a hearing to consider and order their detention.

**A. Sex Trafficking Conspiracy Defendants**

The three defendants charged with a sex trafficking conspiracy—Rivero, Mota, and Gomez—are subject to detention because one of the charges they face creates a rebuttable presumption of detention, all present a serious risk of flight and danger to the community, and they are all likely to obstruct or attempt to obstruct justice. As the analysis explains in detail below, these reasons weigh heavily in favor of detention.

1. <u>Rebuttable Presumption of Detention</u>

As noted above, a sex trafficking conspiracy under 18 U.S.C. § 1594 triggers a rebuttable presumption of detention under the Bail Reform Act, given that it is an "offense under Chapter 77 [with] a maximum term of imprisonment of 20 years or more." 18 U.S.C. § 3142(e)(3)(D). Once the presumption is triggered, the defendant must produce "evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)

6

(citation and internal quotation marks omitted). "Even when a defendant satisfies his burden of production, however, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court"—specifically, the factors set forth in § 3142(g). *See id.* (citation and internal quotation marks omitted). This is so because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* (citation omitted). To rebut the presumption, a defendant must "present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (cleaned up, citation omitted). The government maintains the ultimate burden of persuasion. *Id.*

As illustrated below, even if the defendants were able to produce evidence to rebut the presumption that they pose a danger to the community and risk of non-appearance, a fulsome analysis of the § 3142(g) factors shows that no combination of conditions would reasonably assure the safety of the community, the integrity of these proceedings or their appearance as required.

### B. All Defendants - Flight Risk

As mentioned above, under 18 U.S.C. §§ 3142(e)(1) and (f)(2)(A), all eight defendants are subject to detention because they pose a serious risk that they will flee, and no combination of conditions will reasonably assure their appearance as required. Both the initial request for a detention hearing and an order of pretrial detention must be supported by a preponderance of evidence of flight risk. *See, e.g.*, *United States v. Ramirez-Vaca*, 570 F. Supp. 3d 507, 508-09 (E.D. Ky. 2021) (citing *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991)). This standard is met here.

The history and characteristics of each defendant are relevant to their risk of non-appearance—namely, their lack of lawful immigration status, prior flights from this jurisdiction,

7

and priority for removal by the current Administration as criminal aliens with gang ties—weigh heavily in favor of detention. *See Ramirez-Vaca*, 570 F. Supp. 3d at 509; 18 U.S.C. § 3142(g)(2)-(3).

The defendants are all non-U.S. citizens who lack legal immigration status. Furthermore, all defendants have significant ties outside of the United States, no significant ties to the Middle District of Tennessee, and have traveled extensively between South American countries and between states. These circumstances increase each defendant's flight risk. *See United States v. Ross*, No. 3:23-CR-128-TAV-JEM, 2024 WL 1890087, at *5 (E.D. Tenn. Apr. 30, 2024) (finding defendant to be a flight risk because, among other reasons, he had significant ties to Canada, had no ties to the district in which he was detained, and had traveled internationally to multiple countries across all seven continents). While the defendants' non-citizen status alone is not necessarily determinative of flight risk under the Bail Reform Act, it is an important factor in this Court's analysis. *See Ramirez-Vaca*, 570 F. Supp. 3d 507, 510 (citing *United States v. Veloz-Alonso*, 910 F.3d 266, 269-70 (6th Cir. 2018)).

Four defendants, Morales, Gutierrez, Romero, and Castillo, lived together with defendant Rivero, one of the two leaders of the sex trafficking conspiracy, at the time of Rivero's arrest on December 14, 2023. Lease records and other evidence show that those defendants left the jurisdiction for Texas shortly thereafter, in early January 2024. While in Texas, both Morales and Castillo were arrested and found to be in possession of fraudulent identification documents. Specifically, in February 2024, Castillo was arrested for driving with a fake vehicle tag. In September 2024, Morales was arrested for driving without a license. During booking, the arresting officer discovered that Morales was in possession of a social security card in someone else's name, along with a Texas ID card with that person's name but Morales's photo. Significantly, during the

8

Case 3:25-cr-00022   Document 19   Filed 02/11/25   Page 8 of 16 PageID #: 68

various premises searches in this case, law enforcement seized fraudulent U.S. identity documents for nearly all defendants, including fake U.S. Legal Permanent Resident ID cards for Rivero, Mota, Castillo, and Romero; a fake Texas driver's license for Gutierrez, a fake Venezuelan ID card for Manzano (with her photo but another person's name), and several fake Social Security cards.

Additional evidence shows that each of the defendants departed South America and traversed numerous countries' borders before reaching the United States by land. In other words, they each have an intimate knowledge of the would-be escape route if given the opportunity to flee. Morales, for his part, has made the journey at least twice, having been ordered to depart voluntarily or be subject to deportation and then crossing the border again alongside a victim in this case.

If convicted, Rivero, Mota, and Gomez each face a lengthy sentence of up to life imprisonment under 18 U.S.C. 1594(c), while the remaining defendants currently face sentences of up to five years' imprisonment. All face likely deportation. These circumstances further tip the scale in favor of their detention. *See Ross*, 2024 WL 1890087, at *5 (finding these same circumstances, albeit with a 20-year statutory maximum sentence, weighed in favor of detention); *United States v. King*, 2022 WL 3645996, at *4 (E.D. Tenn. Aug. 24, 2022) (finding that potential term of imprisonment of five to twenty years "increases the risk of flight and warrants pretrial detention").

As opposed to mere migrants, these defendants have proven themselves to be sophisticated actors with an intimate knowledge of international smuggling routes and banking systems, as well as the means and wherewithal to procure fraudulent identity documents. As such, they pose a significant flight risk and should be detained pretrial on that basis.

### C. All Defendants - Obstruction Risk

Like all circumstances enumerated in § 3142(f), the government must proffer evidence by a preponderance to trigger a detention hearing based on obstruction risk. To support pretrial detention on this basis, however, the government must proffer clear and convincing evidence that there is a serious risk that the defendant will "obstruct justice, or threaten, injure, or intimidate … a prospective witness or juror," or attempt to do so. 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Robertson*, 608 F. Supp. 2d 89, 92 (D.D.C. 2009) ("By its plain terms, 18 U.S.C. § 3142(f)(2)(B) permits this Court to order a defendant held without bond pending trial when the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably prevent the defendant from obstructing justice.").

Together with flight risk, a serious risk to obstruct justice under § 3142(f)(1) "pose[s] the greatest peril to the integrity of the judicial process." *United States v. Khatiwada*, No. 3:24-MJ-1277, 2024 WL 4906487, at *4 (M.D. Tenn. Nov. 27, 2024); *see also United States v. Salerno*, 481 U.S. 739, 753 (1987) ("[A] primary function of bail is to safeguard the courts' role," which includes "ensur[ing] the integrity of the judicial process."). Courts have further analogized obstruction risk as a "type of danger to the community that would support detention." *See, e.g.*, *United States v. LaFontaine*, 210 F.3d 125, 134-35 (2d Cir. 2000); *United States v. Young*, 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013) ("Danger to community may include non-violent propensities, such as a record of obstruction of justice."). Examples of obstruction risk include witness tampering (even through non-violent means), destruction of evidence, tipping off co-conspirators, and assisting others in evading police. *See, e.g.*, *United States v. Arzola*, 528 F. App'x 487, 499 (6th Cir. 2013) (citing evidence destruction and tipping off co-conspirators as acts sufficient to trigger obstruction of justice sentencing enhancement); *United States v. Manafort*, 897 F.3d 340, 348 (D.C. Cir. 2018) (upholding revocation of bail based on witness tampering

where no violence was involved); *United States v. Mendoza-Gomez*, 69 F.4th 273, 280 (5th Cir.), *cert. denied*, 144 S. Ct. 311 (2023) (upholding application of obstruction of justice enhancement where defendant tackled officer to impede brother's arrest).

Based on the defendants' conduct in this case, there is a serious risk that they will attempt to obstruct justice, including by threatening or intimidating potential witnesses. The fact that some of the defendants have already done so "speaks volumes" and warrants their pretrial detention to ensure witness safety and the integrity of these proceedings. *See Robertson*, 608 F. Supp. 2d at 92. For example, as alleged in the Indictment, Rivero and Mota used threats of force against the victims and their families to keep them working in commercial sex for their financial benefit. Indictment ¶ 14. They further leveraged their ties to the violent transnational criminal organization, Tren de Aragua (TdA), to cause their victims to fear serious harm against them or their families if they attempted to leave the defendants' commercial sex enterprise before paying off their smuggling debts. Rivero and Mota's pattern of threatening and intimidating the victim-witnesses in this case demonstrates the "very real risk that [they] would continue to intimidate them" during these proceedings. *United States v. Busbin*, No. 3:23-CR-00182, 2024 WL 1313880, at *7 (M.D. Tenn. Mar. 27, 2024) (detaining defendant based on obstruction risk where the underlying conduct involved threatening and intimidating four individuals, and those "same individuals…are instrumental to the success of the Government's prosecution and perhaps his own liberty"). This is especially so given their ties to a transnational criminal organization and sprawling network of criminal associates, as evidenced by the numerous co-conspirators they used to transport victims to Tennessee and otherwise assist with their commercial sex enterprise.

For her part, Gomez has engaged in obstructive conduct relevant to these proceedings—specifically, by deleting evidence from her cell phone simultaneous to the December 2023

recovery operation at the hotel and instructing other potential witnesses to do so as well. Furthermore, given that she was an enforcer for the sex trafficking enterprise, as alleged in the Indictment, there is a serious risk that they would attempt to reprise this role and tamper with witnesses if released.

Manzano similarly appears to have deleted the contents of her cell phone at the time she was encountered during Mota's arrest, and she also threatened a victim in this case in an attempt to collect a debt. Manzano participated in the coercive act of separating a victim from her young child in an effort to control the victim and prevent her from going to the authorities. Prior obstructive acts "speaks volumes" as to their risk of attempting to obstruct justice now that the gravity of their legal predicament has become clear. *See Robertson*, 608 F. Supp. 2d at 92.

In light of their participation in an enterprise that made its money off of women who were tricked into making a treacherous journey to the United States, only to be forced into sexual servitude, each of the defendants has a history of participation in a coercive scheme and is therefore likely to use coercive tactics again during the course of these proceedings. For the above reasons and those to be adduced at a detention hearing, there is no combination of conditions to prevent these defendants from obstructing justice and reasonably assure the integrity of these proceedings.

D. **All Defendants - Danger to the Community**

Each of the charged defendants played an integral role in a sex trafficking enterprise and thus poses a danger to the community and to their victims. *See supra*, Section A.1. Danger-based detention requires clear and convincing evidence that no combination of conditions will reasonably ensure community safety. *See Ramirez-Vaca*, 570 F. Supp. 3d at 508–09; 18 U.S.C. § 3142(f).

With respect to the weight of dangerousness evidence, the court in *United States v. Comberger* noted that this factor "goes to the weight of evidence of dangerousness, not the weight

of the evidence of defendant's guilt." 2021 WL 1725516, at *4 (E.D. Ky. Apr. 30, 2021) (citing *Stone*, 608 F.3d at 948). The court then found that the defendant's past threatening statements and attempts to destroy evidence enhanced the overall danger risk in that case. *See Comberger*, 2021 WL 1725516, at *4. The court emphasized that "threats of physical harm to cooperating witnesses risk serious danger to the witnesses themselves, as well as to the community more broadly," adding that "such conduct fundamentally endangers the integrity of the judicial process." *Id.* at *5 (citing *United States v. Prieto*, 2020 WL 3105414, at *4 (W.D. Ky. June 11, 2020)). Even non-violent threats to the judicial process can constitute sufficient danger to warrant detention. *See Comberger*, 2021 WL 1725516, at *5.

The court in *Comberger* next examined the defendant's history and characteristics and found that this factor also favored detention. *See id.* at *6. The court found especially persuasive that the defendant lacked any legitimate employment history over the past 30 years. *Id.* And while the defendant had lived in the jurisdiction for over 40 years, there was little evidence about his community involvement or ties. *Id.* And "beyond his proclivity for threatening and advocating violence," the court knew little about his personal characteristics. *Id.* Take together, this limited information "tilted pro-detention," especially given the defendant's "endorsement of violence towards those he perceives as opposing him." *Id.*

The history and characteristics of the defendants in this case weigh even stronger in favor of detention than the defendant in *Comberger*. *See* 2021 WL 1725516, at *6. Here, the defendants entered the United States illegally for the purpose of bringing their criminal enterprise to this country. Rivera and Mota are well known in Venezuela and other South American countries as human traffickers. Furthermore, Mota is a confirmed member of TdA, a Venezuelan gang currently in the process of infiltrating the United States, bringing human trafficking, drug

13

trafficking, and other violent crime to several U.S. cities. Rivero is a suspected member of TdA who has used her son's gang affiliation to threaten victims in this case. Furthermore, the other defendants are blood relatives and close associates of Rivero and Mota who profited off their commercial sex venture and are almost certainly loyal to their family and TdA for support and protection. Accordingly, this Court should easily conclude that this factor tilts in favor of detention. *See Comberger*, 2021 WL 1725516, at *6.

Finally, in analyzing the fourth factor, the court in *Comberger* found that the "nature and seriousness of the danger to any person or the community" was significant if the defendant was released. 2021 WL 1725516, at *6. Specifically, the court found that the risk the defendant posed included "the risk of physical harm and violence to actual people, as well as interference and disruption of the administration of justice." *Id.* The court noted that those "risks were unquestionably grave" and "particularly concrete and serious," thus "plainly favor[ing] detention." *Id.*

Here, the release of any of the defendants would pose the same "grave" risks as in *Comberger*, particularly given the defendants' known sprawling network of criminal associates in this country and abroad. *See* 2021 WL 1725516, at *6. This court should similarly conclude as the court in *Comberger* did that "[g]iven the number of witnesses likely involved (some surely still unknown to the Government) and the infinite number of possible communication methods, it would undoubtedly be nearly impossible to police all of [the defendants'] communications and interactions to ensure he ceases the sort of conduct that he has already demonstrated on several occasions." *See id.*

14

In conclusion, applying the same factors as the court did in *Comberger*, there are "no available conditions can adequately target the serious danger risks posed" by the defendants' release. *See Comberger*, 2021 WL 1725516, at *6.

## **CONCLUSION**

In light of the above, this Court can have no confidence that these eight defendants would abide by any combination of conditions set by this Court to ensure the safety of the community and specific witnesses, the integrity of these proceedings, or their appearance in this Court as required.

Respectfully submitted,

ROBERT E. MCGUIRE
Acting United States Attorney

By:

*/s/ Brooke K. Schiferle*
Brooke K. Schiferle
Assistant U.S. Attorney
719 Church Street
Nashville, Tennessee 37203

*/s/ Lindsey Roberson*
Lindsey Roberson
Trial Attorney
Human Trafficking Prosecution Unit
U.S. Department of Justice
Washington, DC 20530

*/s/ Jessica Arco*
Jessica Arco
Trial Attorney
Human Trafficking Prosecution Unit
U.S. Department of Justice
Washington, DC 20530

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing will be served electronically to counsel for defendants via CM/ECF on February 11, 2025.

                                                  */s/Brooke K. Schiferle*
                                                  Brooke K. Schiferle